The Chief Justice
delivered the opinion of the court.
This was an action of covenant brought by Baylor against Timberlake, to recover a part of the price of a lot in the town of Cynthiana, which the former had sold to the latter for the price of $4,500.
Issue was joined upon the plea of covenants performed, and on the trial Timberlake produced in evidence a receipt from Baylor for the sum of $1,600, purporting to be in part discharge of the price of the lot.
It appeared from the evidence that the receipt had been obtained from Baylor by James Snell, and delivered to Timberlake in the following manner: Snell had purchased of Timberlake a part of the same lot, and as a part payment gave his note to Timberlake for $1,600, one day after date, to be discharged by the delivery of a receipt from Baylor for that sum. To procure the receipt from Baylor, Snell paid him $600 in hand, and agreed to transfer to him ten shares, which he then owned in the stock of the bank of Cynthiana; the two first instalments of which had been paid, and the other instalments Snell entered into a written contract to pay if they should be called for by the bank within one year, and if they should not be called for, he bound himself to pay the amount of those instalments, being $600, to Baylor.—On the delivery of Baylor’s receipt to Timberlake, the latter gave up to Snell his note for the $1,600. The written contract between Snell and Baylor, did not bind Snell to transfer the stock, and before it was transferred some dis *619 pute arising about the title of the lot, Snell and Timberlake, on consultation, objected to the transfer being made, and in consequence of instructions by Snell, the officers of the bank refused to transfer the stock to Baylor. On evidence of these facts the counsel for Timberlake moved the court to instruct the jury if they believed the facts to be true, they should allow Timberlake the full amount of the receipt for $1,600, but the court refused to give the instruction, and instructed the jury that if they believed the evidence, they should disregard the $1,000, part of the receipt relating to the bank stock. To this opinion and instruction, Timberlake excepted, and a verdict and judgment being rendered against him, he has appealed to this court.
A debtor procuring a third person to be substituted in his place, & procuring also the creditor's receipt, is absolved (to the amount) from the debt, and the third person failing to comply with his engagement to the creditor, cannot revive the demand against the original debtor.
The instruction given by the circuit court, we are of opinion cannot be sustained.
Snell contracted with Baylor, and procured the receipt from him, not as the agent of Timberlake, but in his own right, and upon his own responsibility. And to him alone, therefore, ought Baylor to look for an indemnity for a breach of that contract, and not to Timberlake, who was no party to the contract.
Timberlake by surrendering the note he held on Snell, paid a full and valuable consideration for the receipt, and the failure of the consideration in part, which Baylor agreed he would receive from Snell, cannot affect the interest of Timberlake, or destroy the validity of the receipt. Had Baylor given his obligation to Timberlake for the payment of so much money, instead of passing his receipt in consideration of Timberlake’s surrendering his note on Snell, the case in its essential features would have been precisely analagous to the case of Clay against Morrison, Har. 421. and according to the principles of that case, he could not have avoided the payment of the money; and most assuredly if he could not in such a case avoid the obligation to pay, he could not, in case the payment was made, reclaim the money or disregard as a nullity a receipt acknowledging the payment to have been made.
Timberlake having concurred with Snell in objecting to the transfer of the stock to Baylor, cannot, we conceive, essentially vary the case.
Snell was the sole owner of the stock, and he alone was bound for its transfer to Baylor. The assent of Timberlake, therefore, was not necessary to the transfer of the *620 stock, and his objecting to its transfer could not make him responsible for the refusal of Snell to perform his contract with Baylor, to which Timberlake was not a party. Snell’s contract with Baylor if it were originally without fraud,(and there is no evidence conducing to shew that it was otherwise) could not become void by his subsequent refusal to perform it, and if it be valid, there is certainly no principle upon which Timberlake can be made liable for its non-performance.
Hardin for appellant. Bibb for appellee.
The judgment must be reversed with costs, and the cause remanded for proceedings to be had, not inconsistent with this opinion.